Herbert A. Posner, J.
This is an action in the amount of $2,108.31 for alleged breach of contract between an insurer and its insured. The plaintiff carried a policy of automobile insurance with the defendant. The policy carried statutory no-fault benefits (as required under article XVIII of the Insurance Law). In addition, for an extra premium (exact amount of the premium not being contained in the submitted set of facts stipulated by the parties), the defendant also sold to the plaintiff automobile medical payments coverage in the principal sum of $5,000.
The medical expense part of the policy stated as follows: "To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, X-ray and dental services including prosthetic devices and necessary ambulance, hospital, professional nursing and funeral services.”
Section 2 of the no-fault part of the policy stated the following: "If automobile medical payments or any disability coverages are afforded under this policy, such coverages shall be excess insurance over any mandatory or additional personal injury protection benefit paid or payable or which would be paid or payable but for the application of a deductible under this or any other automobile No Fault insurance policy.”
On August 13, 1974 the plaintiff was involved in an automobile accident in Queens County wherein she suffered severe permanent injuries. As a result of the hospitalization and other medical treatment which she received, she exhausted the maximum benefits under the mandatory no-fault coverage in her policy of automobile liability insurance with the defendant. However, the exhaustion of her benefits under the no-fault coverage was subsequent to one year following August 13, 1974.
Plaintiff was confined to Mary Immaculate Hospital of Jamaica from August 16, 1975 through October 1, 1975, a period of time that was clearly more than one year after the accident. The hospital bill for this period of time was originally in the sum of $7,164.80 and the defendant, under the no- *426 fault coverage portion of the policy, paid all but $2,108.31. The defendant refused to pay the balance of the hospital bill on the following grounds: (1) The plaintiff had used up her entire $50,000 benefits under the no-fault coverage and; (2) the medical expense part of the policy was no longer in effect because the remaining expenses were not incurred within one year from the date of the accident.
There is no issue presented to the court concerning the fair and reasonable value of the balance of the bill that is being sued hereon. The only issue presented to the court is whether or not the medical payments portion of the policy afforded coverage for the balance of the bill.
To clarify the issues of law involved in this case, the plaintiff narrows the facts down to three basic issues: (1) Does the suspension paragraph in the no-fault policy suspend the one-year limitation provision in the medical payments policy? (2) If the answer to the first question is no, then would the plaintiff be entitled to recover for medical payments benefits simultaneously with no-fault benefits? (3) Do the words "incurred within one year from the date of the accident” mean that the covered service must have actually been expended, or does it mean that the covered service could be reasonably expected to be expended within the one-year period although actually charged subsequent to the one-year period?
The well-settled doctrine of contra proferentum holds that ambiguity in non-negotiated or adhesion contracts are to be construed against the profferer, here the insurer. (Sincoff v Liberty Mut. Fire Ins. Co., 11 NY2d, 386; Hartol Prods. Corp. v Prudential Ins. Co., 290 NY 44; Ore & Chem. Corp. v Eagle Star Ins. Co., 489 F2d 455; Citron v Hartford Acc. & Ind. Co., 86 Misc 2d 26). Accordingly, the answers to the three issues cited above will hinge upon the resolution of whether the insurer had created an ambiguity in the language used in the two parts of the policy which created the no-fault coverage and the medical payments benefits coverage. "In the final analysis, the outcome of a case such as this should be determined not by precise semantic shadings of terms of art, but by a common-sense appraisal of the over-all situation.” (Pulitzer Creations v Phoenix Ins. Co., 47 Misc 2d, 801, 804, affd without opn 52 Misc 2d, 934.)
If the words are clear and create no ambiguity, the insurer is entitled to have the policy endorsed as written (Halper v Aetna Life Ins. Co., 42 Misc 2d 184, affd 44 Misc 2d 437). *427 When words are clear and unambiguous, they are to be taken and understood in their prime, ordinary and proper sense. (Johnson v Travelers Ins. Co., 269 NY 401.)
The relevant policy provisions regarding medical payments reads as follows: "To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, X-ray and dental services including prosthetic devices and necessary ambulance, hospital, professional nursing, and funeral services.” (Emphasis added.)
The words and meaning of the above section are clear and unambiguous. Plaintiff’s contention that the above section should apply to expenses reasonably ascertainable within one year is in direct contradiction to the actual words used therein and would render those words meaningless. The court agrees with the plaintiff that it does not make any difference whether the insured was charged for those services during the one-year period. It is not important when a bill for services is rendered. What matters is, when the services were rendered. The simple dictionary definition of the word "incurred” is "brought upon oneself by one’s own actions; contracted for.” There is no doubt that the services rendered by Mary Immaculate Hospital for the benefit of the plaintiff were contracted for and received by the plaintiff after the one-year period in her policy had elapsed. The Appellate Term of the Second Department in Whittle v Government Employees Ins. Co. (51 Misc 2d 498, 499 [reviewing a case with a similar medical payments clause] stated, "[w]hile we agree with the trial court that the clause in question was, as a matter of law, clear and unambiguous”. The court also defined "expenses incurred within one year” and concluded that if the treatment was commenced within the one year but was not concluded or paid for until the one year had elapsed, then coverage under the medical payments clause would exist. In this case, there is no contention that the treatment for which the $2,108.31 sued for was begun within the one-year period.
The relevant no-fault provision of the policy clearly states that any medical payments under the policy "shall be excess insurance over any mandatory or additional personal injury protection benefit paid or payable.” This language is also clear and unambiguous. The fact that medical payment coverage was made excess to the no-fault benefits is a contractual provision which the insurer has a right to insert in the policy. (Wyman v Allstate Ins. Co., 29 AD2d 319.) The plaintiff felt *428 that it was not fair for the insurer to charge a premium for a form of coverage that was essentially unusable. The plaintiff contends that it is unconscionable for the insurance company to sell medical payment coverage for an extra premium when it is most unlikely that an insured would use up the basic mandatory no-fault coverage in less than one year. The plaintiff feels that the insurance company had an obligation to bring this fact to the attention of the insured. The court agrees with the plaintiff that this is an unconscionable practice because there are very few automobile accident victims who would use up the $50,000 of no-fault benefits in less than one year. The court feels that because of this unconscionability, the plaintiff has a right to recover the premium she paid for the medical payments benefit. Unfortunately, the submitted statement of facts does not enlighten the court as to the amount involved and it would be improper for the court to speculate as to the amount. The court feels that either the State Legislature or the State Insurance Department, by law or regulation, should require insurers to make available to the insured the facts regarding any coverage which, in common parlance, would be described as a "sucker’s bet.”
Judgment for the defendant, without costs.