19 F.3d 1429
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
HIGHWAY EXPRESS, INCORPORATED, Plaintiff-Appellee,
v.
The FEDERAL INSURANCE COMPANY, Defendant-Appellant,
and
National Risk Management Corporation, Defendant.
HIGHWAY EXPRESS, INCORPORATED, Plaintiff-Appellee,
v.
The FEDERAL INSURANCE COMPANY, Defendant-Appellant,
and
National Risk Management Corporation, Defendant.
 Nos. 93-1715, 93-1889.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 7, 1994.
Decided March 24, 1994.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Richmond. Robert R. Merhige, Jr., Senior District Judge. (CA-92-788)
 John Mason Claytor, Harman, Claytor, Corrigan & Wellman, Glen Allen, Va., for appellant.
 Tyler Perry Brown, Hunton & Williams, Richmond, Va., for appellee.
 On Brief: William R. Allcott, Jr., Kathleen A. Sundberg, Harman, Claytor, Corrigan & Wellman, Glen Allen, Va., for appellant.
 Eric J. Sorenson, Jr., Hunton & Williams, Richmond, Va., for appellee.
 E.D.Va.
 AFFIRMED.
 Before WILKINSON and HAMILTON, Circuit Judges, and WILSON, United States District Judge for the Western District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 The Federal Insurance Company (Federal) appeals the April 30, 1993 order of the district court granting summary judgment in favor of Highway Express, Inc. (Highway) on its breach of insurance contract claim and denying Federal's motion for summary judgment. For the reasons stated herein, we affirm.
 
 
 2
 * This action arises from an insurance contract. Highway, an irregular route common carrier that primarily transports cigarettes and other tobacco products, maintains a terminal in Kernersville, North Carolina.[1] To insure against loss of or damage to the transported cargo, Highway purchased, through National Risk Management Corporation (National), a North Carolina corporation with its principal place of business in Charlotte, North Carolina, a motor truck cargo liability insurance policy from Federal, a New Jersey corporation with its principal place of business in Warren, New Jersey. The application for the Federal policy was taken in Charlotte. The policy was typed and assembled in Federal's offices in Charlotte, where it was countersigned by Thomas Scott (Scott), Federal's employee and authorized representative. Scott delivered the policy to National, Highway's agent, in Charlotte. Steven Mariano of National drove from Charlotte to Highway's headquarters in Richmond to deliver the policy to Highway.
 
 
 3
 Effective April 9, 1992, to April 9, 1993, the policy purported to cover:
 
 
 4
 the liability of [Highway] as a motor truck carrier for direct physical loss or damage to lawful goods and merchandise, the property of others, shipped under bills-of-lading, shipping receipts, or delivery receipts issued by [Highway], while such goods and merchandise are in the custody of [Highway], or in the custody of connecting carriers, while in due course of transit within the continental limits of the United States and Canada excluding Alaska and Hawaii.
 
 
 5
 (J.A. 47). Limiting Federal's liability to $1 million arising from the transportation of cigarettes, Endorsement Number 1 (Endorsement No. 1) also contained an exclusion, which stated:
 
 
 6
 It is further agreed that this policy does not cover loss, damage or expense caused by or resulting from theft or attempted theft to an unattended vehicle(s).
 
 
 7
 (J.A. 49). Endorsement No. 1 was an addendum to the Policy containing language drafted solely by Federal. The Policy does not define the phrase "unattended vehicle."
 
 
 8
 On September 4, 1992, R.J. Reynolds Tobacco Company (RJR) employees in Winston-Salem, North Carolina loaded into one of Highway's trailers (the Trailer), 1,315 cases of cigarettes to be transported to RJR's facilities in Hartford, Connecticut. The RJR employees secured a wire cable to the latch of the Trailer door to prevent theft. After being loaded, the Trailer was taken to Highway's Kernersville, North Carolina, terminal yard; the tractor and the Trailer arrived around 1:30 a.m. on Saturday, September 5.
 
 
 9
 At the Kernersville terminal, Highway's local driver took several security precautions. First, the Trailer was placed back-to-back with another trailer loaded with RJR cigarettes. Second, the tractor was disengaged from the Trailer and moved to another part of the yard. Third, a kingpin lock[2] was placed on the Trailer. Finally, the driver left the terminal and locked it by combination padlock.
 
 
 10
 The Kernersville terminal is well-lighted. A six and one-half foot chain link fence topped by three strands of barbed wire surrounds the terminal. The terminal is located in an active neighborhood, and its yard is visible from outside the terminal. The Kernersville Police Department is located one block away, and, at the terminal manager's request, the Police Department checked the terminal on nights and weekends. Prior to the weekend of September 5-7, 1992, Highway had not experienced any thefts or vandalism at the Kernersville terminal.
 
 
 11
 Between 9:30 p.m. on September 5 and 1:00 p.m. on September 6, the Trailer full of cigarettes and a Highway tractor were stolen from the terminal. Neither the tractor, the Trailer, nor the cigarettes have been located.
 
 
 12
 On October 1, 1992, after Highway made demand for coverage under the policy, Federal denied coverage of the claim. Federal stated that the cigarettes were stolen from an "unattended vehicle," so that Endorsement No. 1 excluded the theft from coverage. On November 23, 1992, Highway paid RJR the market value of the cigarettes--$870,250.20.
 
 
 13
 On December 4, 1992, Highway filed suit in the United States District Court for the Eastern District of Virginia against Federal and National, alleging, inter alia, that Federal had breached its insurance contract with Highway and that, as a result, Highway had sustained damages in the amount of $870,250.20.[3] Jurisdiction in this dispute was based upon diversity of citizenship pursuant to 28 U.S.C. Sec. 1332.
 
 
 14
 Count One of the complaint was against Federal and alleged breach of contract. Under this count, Highway sought a judgment against Federal for the amount Highway paid to RJR. Counts Two, Three, and Four were against National and asserted claims of breach of contract, negligence, and negligent misrepresentation, if it was determined that no coverage was provided for the loss under the policy.[4]
 
 
 15
 In the district court, Highway and Federal filed cross motions for summary judgment with respect to Count One of the complaint. On April 30, 1993, the district court entered an Order and Memorandum Opinion granting Highway's motion for summary judgment on Count One, denying Federal's motion for summary judgment on Count One, and dismissing as moot the cross motions for summary judgment on Counts Two, Three, and Four filed by Highway and National.
 
 
 16
 The main issue before the district court was whether the phrase "unattended vehicle" contained in an exclusion in the policy was unambiguous. Finding that the result would be the same under either North Carolina or Virginia law, the district court first reasoned that determination of the choice of law issue--which state's law would apply to the interpretation of the policy--was unnecessary.
 
 
 17
 Next, the district court addressed the threshold question of whether the phrase "unattended vehicle" was an ambiguous term. The district court pointed out that, under both Virginia and North Carolina law, words in an insurance policy are given their ordinary, usual, and commonly accepted meaning when they are susceptible to such construction. The district court observed that a court looks to the policy itself to construe the terms. Examining Webster's New World Dictionary, the district court determined that "unattended" could mean "neglected or ignored" or "not attended or waited on" or "unaccompanied." The district court also noted that case law interpreted "unattended" differently. Therefore, the district court concluded that the phrase "unattended vehicle" in the policy exclusion was ambiguous. Finally, because the language in the exclusion was ambiguous, the district court interpreted the ambiguity strongly against the insurer. Consequently, the exclusion was found to be ineffective.
 
 
 18
 Federal filed a timely notice of appeal from the district court's order of April 30, 1993.
 
 II
 
 19
 The standard of appellate review for the granting or denial of summary judgment is de novo. Thus, the court of appeals uses the same standard as the district court. A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). See Charbonnages de France v. Smith, 597 F.2d 406 (4th Cir.1979).
 
 
 20
 A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. Id. at 255. The plaintiff is entitled to have the credibility of all its evidence presumed. Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir.1990), cert. denied, 111 S.Ct. 1018 (1991). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The opposing party must demonstrate that a triable issue of fact exists; it may not rest upon mere allegations or denials. Anderson, 477 U.S. at 248. A mere scintilla of evidence supporting the case is insufficient. Id.
 
 III
 
 21
 In an action based upon diversity of citizenship, such as the instant case, the relevant state law controls. Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1930). Under Erie, the district court applies the law of the forum state, including its choice of law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487 (1941).
 
 
 22
 Under Virginia case law, an insurance contract is construed according to the law of the state where it is delivered.[5] Hardware Mut. Casualty Co. v. Wendlinger, 146 F.2d 984, 989 (4th Cir.1944); Woodson v. Celina Mut. Ins. Co., 177 S.E.2d 610, 613 (Va.1970). "Delivered" has been interpreted to mean "the place where the last act necessary to give a contract validity" took place. Brand Distrib., Inc. v. Ins. Co. of N. Am., 400 F.Supp. 1085, 1089 (E.D. Va.1974), rev'd and remanded on other grounds, 532 F.2d 352 (4th Cir.1976).
 
 
 23
 Federal argues that the contract was delivered in North Carolina so that North Carolina law should control. Specifically, Federal contends that National was the agent of Highway[6] so that when National took the signed policy from Federal in North Carolina, delivery was complete. On the other hand, Highway asserts that Section 38.2-1801 of the Virginia Code prohibits National from being considered the agent of Highway in an insurance dispute. That statute provides in pertinent part:
 
 
 24
 (a)A licensed agent shall be held to be the agent of the insurer that issued the insurance solicited by or applied for through such agent in any controversy between the insured or his beneficiary and the insurer.
 
 
 25
 Because National personally delivered the policy to Highway at its Richmond headquarters, Highway contends that delivery was effected in Virginia.
 
 
 26
 Fortunately, we need not resolve the question of which state's law applies. As discussed in Issue IV, infra, the relevant language is ambiguous. Both Virginia and North Carolina provide that ambiguous provisions in an insurance contract are read in favor of the insured. In light of the fact that the same result would attain under either Virginia or North Carolina law, we agree with the district court that no resolution of the choice of law issue is necessary.
 
 IV
 
 27
 * Under either Virginia or North Carolina law, words in an insurance policy are given their ordinary, usual, and commonly accepted meaning where they are susceptible to such construction. Anderson v. Allstate Insurance Co., 145 S.E.2d 845 (N.C.1966); Graphic Arts Mut. Ins. Co. v. C.W. Warthen Co., 397 S.E.2d 876 (Va.1990). In determining the ordinary construction of a word, courts often look to dictionary definitions. See Guyther v. Nationwide Mut. Fire Ins. Co., 428 S.E.2d 238, 241 (N.C.App.1993); Van Sumner, Inc. v. Pennsylvania Nat'l Mut. Casualty Ins., 329 S.E.2d 701, 703 (N.C.App.), disc. rev. denied, 336 S.E.2d 406 (N.C.1985); Hill v. State Farm Mut. Auto. Ins. Co., 375 S.E.2d 727, 729 (Va.1989); Ayres v. Harleysville Mut. Casualty Co., 2 S.E.2d 303, 306 (Va.1939). Otherwise, courts look to the four corners of the policy, without resort to extrinsic evidence, to determine whether a word or phrase is ambiguous. Wachovia Bank and Trust Co. v. Westchester Fire Ins. Co., 172 S.E.2d 518 (N.C.1969); Nationwide Mut. Ins. v. Wenger, 278 S.E.2d 874 (Va.1981). Language in a policy is ambiguous if it is capable of two reasonable constructions. Van Sumner, 329 S.E.2d at 703; Caldwell v. Transportation Ins. Co., 364 S.E.2d 1, 3 (Va.1988).
 
 
 28
 Where the language of the policy is unambiguous, a court must apply the terms of the policy as written. Wachovia, 172 S.E.2d at 518; United Serv. Auto Ass'n v. Webb, 369 S.E.2d 196 (Va.1988). On the other hand, if language in a policy is ambiguous, the most favorable construction must be given to the insured. Van Sumner, 329 S.E.2d at 703; Caldwell, 364 S.E.2d at 3.
 
 
 29
 Despite Federal's argument that the phrase "unattended vehicle" in the exclusion is unambiguous, we find the district court's interpretation to be the correct conclusion. Webster's New World Dictionary defines "unattended" as "(1) not attended or waited on (2) unaccompanied (by or with) (3) neglected or ignored." Webster's New World Dictionary (3d College Ed.1989). Given that the plain and ordinary meaning of "unattended" is capable of two reasonable constructions, we construe the phrase contained in the policy as ambiguous.
 
 B
 
 30
 Although we look to the ordinary construction of a word to determine if it is ambiguous, both parties argue that cases have judicially construed "unattended" such that it is either unambiguous, as Federal contends, or ambiguous, as Highway contends. Considering these cases in our attempt to define "unattended vehicle," we find that Federal's argument fails.
 
 
 31
 First, Federal points to Davis v. Virginia, No. 1235-92-2 (Va. Ct.App. Feb. 8, 1993), which was decided after oral argument in this case. In Davis, the defendant Davis was charged with, inter alia, leaving an unattended motor vehicle on a roadway so as to constitute a hazard in violation of Va.Code. Ann. Sec. 46.2-1209. The trial court gave a jury instruction, which read in pertinent part:
 
 
 32
 Defendant is charged with the crime of abandoning or leaving a motor vehicle unattended on the public highways constituting a hazard in the use of the highway.
 
 
 33
 To find the defendant guilty, you must find the motor vehicle was unattended or abandoned and that it constitutes a hazard in the use of the highway.
 
 
 34
 Id. at 5. Rejecting the defendant's argument that the trial court erred in refusing to instruct the jury on the meaning of "abandonment," the Virginia Court of Appeals held that the definition of "abandonment" played no role in the case. The court noted that "the evidence disclosed that the car was left on the highway unattended and constituting a hazard." Id. at 9. In a concurring and dissenting opinion, Judge Benton, in the course of discussing whether the officer needed a warrant to arrest Davis, stated, "[o]nce Davis exited the automobile and departed, he left the automobile unattended. The offense was then complete." Id. at 13.[7]
 
 
 35
 Arguing that Davis stands for the proposition that "unattended" does not mean "abandoned," Federal contends that Davis bolsters its argument that "unattended" is unambiguous. We find no merit in this argument. First, Highway does not contend simply that "unattended" means "abandoned." Rather, Highway asserts that "unattended" may also mean "neglected." Second, courts are loathe to resort to interpretations for other purposes, such as motor vehicle statutes, when construing insurance policies. See, e.g., Durham City Bd. of Educ. v. National Union Fire Ins. Co., 426 S.E.2d 451, 456 (N.C.App.), disc. rev. denied, 431 S.E.2d 22 (N.C.1993) (holding interpretation for purposes of omnibus clause in automobile liability policy not applicable when interpreting exclusionary clause in different factual setting); American Reliance Ins. Co. v. Mitchell, 385 S.E.2d 583, 586 (Va.1989) (holding term "employee" ambiguous in insurance policy despite accepted definition of "employee" under workers compensation laws). See also Mayflower Ins. Exch. v. Kosteriva, 367 P.2d 572, 574 (Idaho 1961) (holding term "operated" in insurance policy was ambiguous despite definition in motor vehicle statute).[8]
 
 
 36
 In reaching the conclusion that the phrase "unattended vehicle" is ambiguous, we note that other policies issued by Federal used qualifying language to explain when a vehicle was deemed to be unattended under the policy. For example, in another policy covering cargo losses issued by Federal, the exclusion stated, in pertinent part:
 
 
 37
 This policy does not cover loss or damage to the insured property while left unattended in or on any vehicle and/or trailer unless such vehicle and/or trailer are parked in a fully enclosed fenced-in area with suitable locks or in a locked garage.
 
 
 38
 (J.A. 97).
 
 
 39
 Accordingly, we find that if Federal meant to exclude coverage unless a Highway employee actually was present with the cargo, Federal should have expressly written this into the policy.[9]
 
 V
 
 40
 Under both Virginia and North Carolina law, all exclusions in an insurance policy must be clearly and unambiguously articulated by the insurer to be effective. See Hill, 375 S.E.2d at 727; Lincoln Nat'l Life Ins. Co. v. Commonwealth Corrugated Container Corp., 327 S.E.2d 98 (Va.1985). Further, ambiguities are always interpreted strongly against the insurer and must be construed to effectuate coverage. Joseph P. Bornstein Ltd. v. National Union Fire Ins., 828 F.2d 242, 245 (4th Cir.1987); Jefferson Pilot Fire v. Boothe, Prichard and Dudley, 638 F.2d 670, 675 (4th Cir.1980); Van Sumner, 329 S.E.2d at 703; Ayres, 2 S.E.2d at 304-05; Wachovia, 172 S.E.2d at 518. This doctrine is sometimes referred to as contra proferentum. Phillips v. Lincoln Nat. Life Ins. Co., 978 F.2d 302, 306 (7th Cir.1992); St. Paul Mercury Ins. Co. v. Duke Univ., 670 F.Supp. 630, 633 (M.D.N.C.1987), aff'd in part, rev'd in part on other grounds, 849 F.2d 133 (4th Cir.1988).
 
 
 41
 Federal proffers several arguments militating against the district court's application of the contra proferentum doctrine. We consider each in turn.
 
 
 42
 * Federal argues that this doctrine should be a "tie-breaker." It contends that, when a term is ambiguous, extrinsic evidence of the parties' intent should be adduced to indicate the meaning of the term. Only when the meaning cannot be determined, Federal argues, should the doctrine which favors the insured come into play. We disagree. Although North Carolina and Virginia cases state that standard contract law governs the interpretation of insurance contracts, the cases applying the doctrine of contra proferentum do not require extrinsic evidence once an exclusion has been deemed ambiguous. See Guyther, 428 S.E.2d at 242; Van Sumner, 329 S.E.2d at 703; Wachovia, 172 S.E.2d at 525, 527; Smith v. Allstate Ins. Co., 403 S.E.2d 696, 697-98 (Va.1991); American Reliance, 385 S.E.2d at 586; Hill, 375 S.E.2d at 730.[10]
 
 B
 
 43
 Federal contends that, upon determining the phrase "unattended vehicle" was subject to two possible meanings, the district court should have submitted the case to a jury. We find Federal's argument to be without merit.
 
 
 44
 As previously discussed, both Virginia and North Carolina case law require an ambiguous exclusion to be construed so as to effectuate coverage. For example, in Caldwell v. Transportation Ins. Co., the Supreme Court of Virginia held that it need not resolve the factual determination of whether a well-drilling operation at issue was a sufficiently "similar operation" to mining or tunneling to come within the ambit of an exclusionary clause. The court also held that it need not consider rules of construction advanced by the insurer. These inquiries were not necessary because "the language of clause 2(c) is insufficiently precise to exclude coverage of the loss." 364 S.E.2d at 3. The Caldwell court also stated, " 'It was incumbent upon the insurer to employ exclusionary language clear enough to avoid any such ambiguity, if it wished to exclude coverage.' " Id. (quoting St. Paul Ins. v. S.L. Nusbaum & Co., 316 S.E.2d 734, 736 (Va.1984)). See also Smith, 403 S.E.2d at 697-98 (declaring that, because exclusionary language was imprecise, "[i]t is not incumbent upon us to resolve the parties' dispute as to the effect of subparagraph (c)"). See also Van Sumner, 329 S.E.2d at 704-05 (North Carolina Court of Appeals interpreted ambiguous provision in insurance contract in favor of insured on summary judgment.)
 
 
 45
 Contrary to Federal's implication, cases applying Virginia and North Carolina law have construed ambiguous terms in an exclusion to effectuate coverage on summary judgment, with neither a jury trial nor a bench trial. See Bornstein, 828 F.2d at 244-46 (applying Virginia law); West American Ins. v. Tufco Flooring, 409 S.E.2d 692, 697 (N.C.App.1991), disc. rev. denied, 420 S.E.2d 826 (N.C.1992); Caldwell, 364 S.E.2d at 3.[11]
 
 VI
 
 46
 In summary, we find that the district court properly granted summary judgment in favor of Highway. Accordingly, the judgment of the district court is affirmed.
 
 AFFIRMED
 WILSON, District Judge, dissenting:
 
 47
 I agree with the majority that we do not have to answer the choice of law question because Virginia's and North Carolina's rules for construing insurance policies are essentially the same. I also agree that "unattended vehicle" is susceptible to two meanings--one connotes the absence of an attendant, and the other a state of neglect. Moreover, I agree that the court is obligated to apply any plausible definition that is favorable to the insured. I disagree, however, with the majority's conclusion that the ambiguity in the exclusion translates into judgment for Highway as a matter of law.
 
 
 48
 Essentially, there are three steps to the process of determining the effect of an exclusion. First, the court must determine if there is an ambiguity; second, if there is an ambiguity, the court must determine whether a liberal, plausible reading might afford coverage; and third, if there is a liberal, plausible reading that might afford coverage, there must be a determination as to whether the facts support an application of the exclusion under that reading. In my view the majority ceased it's inquiry at the second step. In doing so, the majority simply concluded that the trial court was entitled to decide that Highway was not neglectful as a matter of law, although Highway left more than $870,000 in cigarettes in a trailer, in a fenced lot, without an attendant over Labor Day weekend. I believe the majority is permitting the district court to decide a question that is quintessentially one for the jury. See Allgood v. Hartford Fire Ins. Co., 119 S.E. 561 (N.C.1923) (whether the insured used due diligence in securing an unattended vehicle was a question for the jury). I, therefore, respectfully dissent.
 
 
 
 [1]
 Highway is a Virginia corporation with its principal place of business in Richmond, Virginia
 
 
 [2]
 By inserting this lock into the kingpin of a trailer, the tractor is prevented from engaging the trailer
 
 
 [3]
 National is not a party to this appeal
 
 
 [4]
 These three latter counts are not at issue in this appeal
 
 
 [5]
 Virginia statutory law is in accordance with this rule. See Va.Code Ann. Sec. 38.2-312. That section provides in pertinent part:
 No insurance contract delivered or issued for delivery in this Commonwealth and covering subjects which are located or residing in the Commonwealth, or which are performed in this Commonwealth shall contain any condition, stipulation or agreement: (1)requiring the contract to be construed according to the laws of any other state or country,....
 
 
 [6]
 This allegation is based on the complaint, which states that "National Risk, acting as Highway's agent, agreed to and did procure motor truck cargo liability insurance for Highway from Federal ..." (emphasis added). (J.A. 15). In the complaint, Highway also refers to National as "an insurance broker." (J.A. 11)
 
 
 [7]
 In addition, Federal cites two cases construing North Carolina law which purportedly interpret the word "unattended." See Fidelity-Phenix Fire Ins. Co. v. Pilot Freight Carriers, 193 F.2d 812 (4th Cir.1952), and Pinyan v. Settle, 139 S.E.2d 863 (N.C.1965). Both cases, however, are inapposite to the instant case. First, no safety precautions at all were taken in the Fidelity case. Thus, we had no cause to address the meaning of "unattended" as neglected--the interpretation proffered by Highway. Unlike the parties in Fidelity, Highway provided adequate security measures at the terminal. Second, the Pinyan case did not involve an insurance policy; rather, it was a negligence action in which the issue was whether a child was left in an unattended motor vehicle
 
 
 [8]
 Highway cites several cases in support of its argument that "unattended" is ambiguous. See, e.g., Travelers Ins. Co. v. Tomor, 283 A.2d 827 (D.C.Cir.1971) (holding term "unattended" not technical and ordinarily defined in common usage as "not cared for" or "unaccompanied"); Dreiblatt v. Taylor, 67 N.Y.S.2d 378, 379 (1947) (declaring term "unattended" to have connotation of lack of diligence or protection)
 
 
 [9]
 We note that under Federal's interpretation of the exclusion, the policy would not really offer much protection to Highway, except perhaps in the case of robbery
 
 
 [10]
 The cases relied upon by Federal fail to prove otherwise. See Schneider v. Continental Casualty Co., 989 F.2d 728 (4th Cir.1993); Harbor Ins. Co. v. Continental Bank Corp., 922 F.2d 357 (7th Cir.1990). In Schneider, we simply held the district court should not have considered extrinsic evidence in deciding whether a term in an insurance policy was ambiguous. We were not addressing contra proferentum. Although Judge Posner in Harbor Insurance substantially supports Federal's theory that the doctrine of contra proferentum is merely a tie-breaker, Virginia and North Carolina courts construe ambiguous provisions in favor of the insured to effectuate coverage
 
 
 [11]
 Furthermore, the essential facts in this case are undisputed. The tractor and Trailer were secured in numerous ways. Given that the phrase "unattended vehicle" must be construed liberally in favor of Highway, we could properly find as a matter of law that the Trailer was not "unattended."