896 F.2d 546
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Carlton M. GREEN; Richard C. Daniels, Plaintiffs-Appellees,
v.
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,
Defendants-Appellant.
Carlton M. GREEN; Richard C. Daniels, Plaintiffs-Appellants,
v.
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,
Defendants-Appellees.
 Nos. 89-2311, 89-2326.
 United States Court of Appeals, Fourth Circuit.
 Argued: Nov. 3, 1989.
Decided: Feb. 5, 1990.
 
 1
 Joseph L.S. St. Amant (Elizabeth E.S. Skilling, Mcguire, Woods, Battle & Boothe, on brief), for appellant.
 
 
 2
 John H. Rust, Jr. (Donna H. Henry, Rust, Rust & Silver, on brief), for appellee.
 
 
 3
 Before MURNAGHAN and CHAPMAN, Circuit Judges, and EDWARD S. NORTHROP, Senior United States District Judge for the District of Maryland, sitting by designation.
 
 EDWARD S. NORTHROP, Senior District Judge:
 
 4
 This case involves the construction of an insurance contract. The National Union Fire Insurance Company ("National Union") appeals an order entering summary judgment in favor of its insured, Carlton Green and Richard Daniels ("Green and Daniels"), awarding them reimbursement of costs incurred defending a Rule 11 sanctions motion. Green and Daniels cross-appeal the district court's denial of coverage of their settlement on the Rule 11 motion. For the reasons stated below, we affirm.
 
 I.
 
 5
 Green and Daniels, attorneys practicing law in the State of Maryland, are partners in the law firm of Green, Loboudger and Daniels. The law firm purchased a standard professional malpractice insurance policy from National Union for the period from December 10, 1985, to December 10, 1986.
 
 
 6
 In March 1986, Green and Daniels represented the Lavay Corporation in civil litigation against Dominion Federal Savings & Loan in the United States District Court for the Eastern District of Virginia. They filed an amended complaint naming William Dorn, counsel for Dominion, as a defendant. At trial, however, the claim against Dorn fell when the district court entered a directed verdict.
 
 
 7
 Dorn thereafter filed a Rule 11 motion seeking $137,000 in sanctions against Green and Daniels. Green and Daniels requested that National Union defend the motion. National Union denied coverage based on a specific exclusion under the policy. The district court denied the Dorn motion. This Court, however, reversed and remanded to the district court because a factual record regarding the denial of the sanction motion was lacking. On remand, National Union again refused to defend Green and Daniels. The motion was denied as moot when Green and Daniels paid a settlement of $15,000.
 
 
 8
 Thereafter, Green and Daniels filed an action in the Circuit Court for Fairfax County, Virginia, seeking recovery of both their attorney's fees incurred in the defense of the Rule 11 motion and the sum paid in settlement. National Union later removed the case to the federal district court for the Eastern District of Virginia. On cross-motions for summary judgment, the district court found that a specific exclusion in the policy precluded payment of the $15,000 settlement. The district court, however, found that the policy was ambiguous on excluding the duty to defend the claim. Since National Union had drafted the policy, the district court resolved the ambiguity in favor of the insured and found there was a duty to defend.
 
 II.
 
 9
 The district court correctly held that the policy language excluded any payment by the insured resulting from a Rule 11 motion. Exclusion (k) under the policy exempts payment of any sanction. The exclusion states, "[t]his policy does not apply ... to any punitive or exemplary damages, fines, sanctions, or penalties, or the return of or reimbursement for legal fees, costs or expenses." (Emphasis added.) The district court found that payment of $15,000 by Green and Daniels in settlement of the Rule 11 sanctions motion was encompassed by exclusion (k). We agree.
 
 
 10
 Green and Daniels' argument that there must be a finding by the district court that sanctions are appropriate under Rule 11 before the exclusion applies is without merit. The settlement payment emanated from the filing of the Rule 11 motion. No payment would have been made by Green and Daniels but for the Rule 11 motion. Therefore, exclusion (k) applies and explicitly excludes the duty to indemnify.
 
 III.
 
 11
 The second issue is whether the district court erred in entering summary judgment for Green and Daniels on the question of the duty to defend. We find that it did not.
 
 
 12
 The policy language is dispositive here. The pertinent provisions of the policy state:
 
 I. Coverage
 
 13
 To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of any claim or claims ... arising out of any act, error or omission of the insured in rendering or failing to render professional services for others in the insured's capacity as a lawyer ... and caused by the insured ... except as excluded or limited by the terms, conditions and exclusion of this policy.
 
 
 14
 II. Defense and Settlement ...
 
 
 15
 The company shall have the right and duty to defend, subject to and as part of the limits liability, any suit against the insured seeking damages which are payable under the terms of this policy....
 
 Exclusions
 This policy does not apply:
 
 16
 (k) to any punitive or exemplary damages, fines, sanctions or penalties, or the return of or reimbursement for legal fees, costs or expenses.
 
 
 17
 Section I (Coverage) sets forth the general obligation of National Union to indemnify the insured except as specifically limited by the exclusions. Section II (Defense and Settlement) obligates National Union to provide a defense to the insured to all claims payable under the policy "subject to and as part of the limits of liability."
 
 
 18
 National Union argues that Section II unambiguously excludes the duty to defend since no duty to indemnify exists under exclusion (k). National Union submits that the language "[t]he Company shall have the ... duty to defend ... any suit against the insured seeking damages which are payable under the terms of this policy" negates the duty to defend any claim for sanctions since exclusion (k) specifically excludes such damages from policy coverage. Without a duty to indemnify, National Union maintains that Section II's duty to defend does not apply.
 
 
 19
 Green and Daniels, however, argue that the term "damages" in Sections I and II should be broadly construed. They reason that, unless sanctions in the broad sense are included as damages, exclusion (k) is meaningless. Since "damages" includes sanctions under both Sections I and II, only the language of the exclusions can operate to negate National Union's obligations to indemnify and defend as created in Sections I and II. Green and Daniels then focus on the language of the exclusions. Each exclusion provided in the policy, with the exception of (e) and (k), contains the language "to any claim...."[1] Green and Daniels argue that, by omitting the phrase "to any claim arising out of" when drafting exclusion (k), National Union excluded only the duty to indemnify sanctions paid, not the duty to defend against the claim.
 
 
 20
 The district court, in considering the parties' respective interpretations of the policy, found that "at best the policy is ambiguous" on the duty to defend. We agree. Where there is an ambiguity contained in an insurance contract, the provisions should be construed in favor of broader coverage. Bornstein v. National Union Fire Ins. Co., 828 F.2d 242, 245 (4th Cir.1987) (interpreting Virginia law); Caldwell v. Transportation Ins. Co., 234 Va. 639, 643, 364 S.E.2d 1 (1988); Mutual Fire, Marine & Inland Ins. Co. v. Vollmer, 306 Md. 243, 251, 508 A.2d 130 (1986) (interpreting Maryland law).[2] Therefore, the district court correctly construed the policy in favor of a greater degree of coverage.
 
 
 21
 The record from several proceedings below indicates that the district court entertained competing concerns about the contract's language. First, the district court noted that Section II's provision that "[t]he Company shall have the right and duty to defend ... any suit against the insured seeking damages which are payable under the terms of this policy" could negate the duty to defend. However, the district court was equally concerned that the difference in phrasing of exclusion (k) could have been caused by the nature of the damages sought to be excluded by (k). Punitive damages and sanctions are generally sought in connection with other types of claims which National Union is required to defend and indemnify under the terms of the policy. Therefore, the district court contemplated that the policy arguably distinguishes between the duties to indemnify and to defend by the addition of the preface "any claim." Since exclusion (k) does not contain the language "any claim," a reasonable construction could interpret exclusion (k) to exclude only the duty to indemnify. Since the policy was susceptible to alternative reasonable interpretations, the district court was correct in construing the policy in favor of Green and Daniels.
 
 
 22
 AFFIRMED.
 
 MURNAGHAN, Circuit Judge, dissenting:
 
 23
 Here we have an instance where an ambiguity is imagined but none exists. Because of the supposed ambiguity and the principle that all ambiguities should be drawn in favor of an insured, the panel majority has concluded that the professional malpractice policy at issue obliges National Union to defend against claims seeking Rule 11 sanctions for actions of the insured even though such claims are not covered by the insurer under the terms of the policy. Because I consider the policy unambiguously to create a duty to defend against only those claims for which the insurer could ultimately be liable, I dissent.
 
 
 24
 Any duty to defend arising under the policy must come from Section II of the policy. That section states, "The Company shall have the right and duty to defend, subject to and as part of the limits liability, any suit against the insured seeking damages which are payable under the terms of this policy ...." Rule 11 sanctions, and amounts paid in settlement thereof, are not payable under the terms of the policy. Therefore, it must follow that National Union has no duty to defend a suit seeking only Rule 11 sanctions. It is not a "suit against the insured seeking damages which are payable under the terms of this policy."
 
 
 25
 My brothers find merit in an alternative construction of the policy offered by the insureds, Green and Daniels. The argument goes as follows: (1) Section I makes National Union liable to pay all damages resulting from an insured's professional acts, including Rule 11 sanctions; (2) Section II creates a duty to defend against all claims for damages as defined in Section I; and (3) Exclusion (k) excludes liability for the amount of sanctions, but does not, contrary to the policy's other exclusions, exclude liability for the defense against claims seeking such sanctions. Thus, Green and Daniels argue, a duty to defend against claims for Rule 11 sanctions remains after adding Sections I and II and subtracting Exclusion (k).
 
 
 26
 The reason why Green and Daniels' interpretation is unreasonable is because Section II only creates a duty to defend against those suits seeking damages "payable under the terms of the policy." It does not create a duty to defend against claims seeking damages as set forth in Section I. The policy unambiguously mandates that the exclusions, along with Section I, be considered when determining the scope of the duty that Section II creates.
 
 
 27
 Because I find that the policy unambiguously limits the defense duty to claims for which National Union could be liable, I would reverse the district court's contrary determination.
 
 
 
 [1]
 The exclusions state:
 This policy does not apply:
 (a) to any claim arising out of any criminal act, error or omission of any insured;
 (b) to any claim arising out of any dishonest, fraudulent or malicious act, error or omission of any insured committed with actual dishonest, fraudulent, or malicious purposes or intent ...;
 (c) to claims by one insured under this policy against another insured under this policy;
 (d) to any claim arising out of bodily injury to, or sickness, disease or death of any person, or to injury to or destruction of any tangible property, including the loss of use thereof ...;
 (e) to any loss sustained by an insured as a beneficiary or distributee of any trust or estate;
 (f) to any claim arising out of any insured's activities as an officer or director of any employee trust, charitable organization, corporation, company or business other than that of the Named Insured;
 (g) to any claim made by or against or in connection with any business enterprise ... which is owned by any insured or in which any insured is a partner, or employee ... or which is directly or indirectly controlled, operated, or managed by any insured in a non-fiduciary capacity;
 (h) to any claim arising out of any acts, errors or omissions occurring prior to the effective date of the first policy issued to the Named Insured;
 (i) to any claim arising out of any insured's capacity as an elected public official or as an employee of a governmental body ...;
 (j) to any claim arising out of any insured's activities and/or capacity as a fiduciary under the Employment Retirement Income Security Act of 1974 ...;
 (k) to any punitive or exemplary damages, fines, sanctions or penalties, or the return or reimbursement for legal fees, costs or expenses.
 
 
 [2]
 The district court made no finding as to what state law applied. Since under both Maryland and Virginia law ambiguities are to be construed against the insurer, we need not determine what law applies