# William F. Caldwell, Jr.

## v.

# Transportation Insurance Company

Record No. 850019

January 15, 1988

Present: All the Justices

*Stuart C. Sullivan, III (Franklin, Franklin, Denney & Heatwole*, on briefs), for appellant.

*Deborah M. Wassenaar (Jay T. Swett; Bonnie L. Paul; Mc-Guire, Woods & Battle*, on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

The sole question presented by this appeal is whether exclusionary language in an insurance policy is sufficient to avoid coverage of a loss.

The facts are undisputed. William F. Caldwell, Jr., is an experienced well-driller doing business in Augusta County. On July 8, 1981, he was engaged in drilling a water well for a customer in an area near New Hope, where the substrata consist primarily of shale, a relatively soft rock. After drilling to a depth of 405 feet, he encountered an adequate supply of good water. The drilling process, which had been uneventful, was then complete. Caldwell then raised the bit slightly, "pulled up, off the bottom," and began a process called "blowing out the hole" to remove mud and stone chips. The purpose of this operation was to "clean out the hole, so when you put a pump in, you don't burn the pump up."

The cleaning process involved rotating the drilling bar, to which the bit was attached, in the well hole while blowing water up from the bottom with compressed air in order to bring debris to the surface. After the drilling equipment had been rotated 20 to 25 minutes, Caldwell heard a rush of air which indicated that the bar

had broken. He withdrew the bar, which consisted of 15-foot sections threaded together, and ascertained that a break had occurred at a depth of 120 feet. All sections of the bar below 120 feet, as well as the bit, remained in the ground and all efforts to extract them failed.

The broken section of drill bar was produced at a deposition, which was offered in evidence. The bar was "reasonably brand new," exhibited no significant signs of wear, and showed no evidence of any inherent defect.

Caldwell's uncontroverted expert opinion was that there had been a change in the slope of the rock strata at a depth of 120 feet, which caused the drill to depart from a true vertical at that level. This change of direction introduced a "dog leg" in the bar. He said that such a deflection "cannot be detected by any of the gauges on the machine, by noise, or feel." He also said that such a deflection will not cause a bar to break during the drilling process, but "[i]f you take the same bar, and stop it in one place, and keep turning it for twenty or thirty minutes, you will break it." He testified that "it's always this type of condition that will break a bar" and that breakage from this cause is one of the risks inherent in the well-drilling business.

Caldwell had purchased an insurance policy from Transportation Insurance Company in 1979, which was in effect on the date of loss, and which specifically described the well-drilling equipment which is the subject of this action as "property insured." The "amount of insurance" provided for the equipment was $93,000. The declaration page of the policy recited that the business of the insured was "Plumber-Drilling Wells." The coverage was contained in a "scheduled property floater" attached to part III of the policy, captioned "Inland Marine." The equipment was described in a "CONTRACTORS' EQUIPMENT ENDORSEMENT - Broad Form."

The "Perils Insured" clause provides: "This policy insures against all risks of direct physical loss of or damage to the insured property from any external cause (including general average and salvage charges) except as hereinafter excluded." Two exclusionary clauses are pertinent:

 2. Property Excluded. This policy does not cover:
 . . . .

(c) property while in cofferdams or while ˙below the ground surface in mining, tunneling or similar operations, unless specifically endorsed hereon;

. . . .

7. Perils Excluded. This policy does not insure against:

. . . .

(c) Loss or damage caused by any repairing or restoration or remodeling process, structural or mechanical or electrical breakdown or failure unless fire ensues and then only for the loss or damage by such ensuing fire.

Caldwell made claim under the policy for the loss, the insurer denied coverage, and Caldwell brought this action. The case was, by agreement, submitted to the court upon Caldwell's deposition, a copy of the policy, and briefs of counsel. The court entered summary judgment for the insurer, finding that the loss was not covered by the policy. We granted Caldwell an appeal.

 The insurer argues on brief that the coverage of the policy is not broad enough, irrespective of its exclusionary language, to include Caldwell's loss. This argument is based on the history and general nature of "inland marine" insurance, which the insurer asserts was never intended to cover risks inherent in the insured's business. That argument is entirely inapposite to this case, however, because of the broad sweep of the "Perils Insured" clause quoted above. Here, the loss is clearly covered unless excluded by one of the clauses quoted above.

 In *St. Paul Ins.* v. *Nusbaum & Co.*, 227 Va. 407, 316 S.E.2d 734 (1984), we most recently considered the interpretation of an exclusionary clause in an insurance policy. We said:

Insurance policies are contracts whose language is ordinarily selected by insurers rather than by policyholders. The courts, accordingly, have been consistent in construing the language of such policies, where there is doubt as to their meaning, in favor of that interpretation which grants coverage, rather than that which withholds it. Where two constructions are equally possible, that most favorable to the insured will be adopted. *Language in a policy purporting to exclude certain events from coverage will be construed most strongly against the insurer.*

*Id.* at 411, 316 S.E.2d at 736 (emphasis added) (citations omitted).

■ We apply the foregoing principles to the exclusionary clauses considered here. The well-drilling operation was neither "mining" nor "tunneling," so as to be excluded by the specific terms of clause 2(c), nor does the insurer so contend. Rather, insurer and insured debate whether well-drilling is a "similar operation," so as to be excluded under the general language of that clause. Both similarities and differences are pointed out, and earnestly argued, between mining and tunneling, on one hand, and well-drilling on the other. A reasoned argument can be made either way, and the existence of such a reasonable difference of opinion is alone sufficient to answer the question before us. In *Nusbaum*, resolving a similar debate concerning the applicability of an exclusionary clause, we said:

> Thus, the question in this case is resolved by the mere fact that reasonable men, including experts on the subject . . . may reach reasonable, but opposite, conclusions . . . . It was incumbent upon the insurer to employ exclusionary language clear enough to avoid any such ambiguity, if it wished to exclude coverage . . . .

*Id.* at 412, 316 S.E.2d at 736.

We need not resolve the question whether well-drilling is a sufficiently "similar operation" to mining or tunneling to come within the ambit of clause 2(c), nor need we resort to the rule *ejusdem generis*, urged by the insured, to decide the scope of general language which follows specific terms in a contract. Instead, applying the rule of interpretation set forth in *Nusbaum*, we hold that the language of clause 2(c) is insufficiently precise to exclude coverage of the loss.

■ Clause 7(c), quoted above, fares no better. The "Perils Insured" clause, which must be broadly construed in favor of coverage, insures against "all risks . . . from any external cause . . . except as hereinafter excluded." Clause 7(c) is, like clause 2(c), susceptible to two interpretations. It purports to exclude losses "caused by . . . structural or mechanical . . . breakdown or failure . . . ." If this exclusion were interpreted broadly, it might be found to exclude losses arising from external causes as well as from inherent defect. Such a reading would restrict the effect of

the "Perils Insured" clause by excluding from coverage almost every imaginable loss which results in failure of the equipment to function. Because most casualties to contractor's equipment may be expected to impair its function to some degree, such an interpretation renders the insurance clause nearly meaningless and the insurance nearly worthless.

■ We will not adopt such an interpretation. Instead, construing clause 7(c) narrowly, pursuant to the rule in *Nusbaum*, we hold that the effect of its exclusion of losses caused by structural or mechanical breakdown or failure is restricted to losses arising from internal or inherent deficiency or defect, rather than from any external cause. That interpretation is consonant with, rather than repugnant to, the insurance clause. Losses arising from external causes are covered. Losses caused by inherent defect are excluded. There is a sound pragmatic basis for such an interpretation. A contractor may have recourse against the seller or manufacturer of equipment which fails from inherent defect, but his only protection against damage from external causes is ordinarily the purchase of insurance.

■ The undisputed evidence before us is that the drilling rod was free from any internal or inherent defect. Rather, it failed because it was bent by an external cause, a discontinuity in the rock strata through which it passed, and was then rotated repeatedly while subjected to that external force. The stresses resulting from its use while subject to that external force, rather than any inherent defect, occasioned the loss. The language of clause 7(c) is, therefore, insufficient to exclude coverage.

Because the insurer failed to employ language sufficiently clear to exclude coverage under the policy, we will reverse the judgment and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*

COMPTON, J., dissenting.

I cannot join the majority opinion which, in a display of judicial sleight of hand, creates insurance coverage where none exists.

In clear, unambiguous language, the property damage endorsement in issue excludes coverage for "property while . . . below the ground surface in mining, tunneling or similar operations." In

my opinion, well drilling is a type of underground operation that is similar to mining and tunneling. Therefore, the activity in which the equipment was damaged fell within the type of operations unambiguously excluded from the policy.

I would construe the language of the insurance contract as it is written, not write a new agreement for the parties. I am not persuaded by the logic of the proposition, advanced by the majority, that merely because a "reasoned argument can be made either way" by lawyers for the parties on the meaning of the exclusion, an ambiguity is created. This appears to be bootstrapping in its purest form.

Consequently, I would affirm the judgment of the trial court.

THOMAS and WHITING, JJ., join in dissent.