**CONTINENTAL INSURANCE CO., Plaintiff,**

v.

**ACADIA INSURANCE CO., Defendant.**

No. 2:96–CV–239.

United States District Court, D. Vermont.

Aug. 12, 1997.

William E. Reed, III, Andrea M. DiFabio, Robins, Kaplan, Miller & Ciresi, Boston, MA, Robert Paul McClallen, McClallen Ruggiero, Rutland, VT, for Plaintiff.

James Burgess Grussing, Eaton & Hayes, P.C., Woodstock, VT, for Defendant.

*OPINION AND ORDER*

SESSIONS, District Judge.

Continental Insurance Company ("Continental") has brought this action for declara-

tory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 seeking a declaration as to the apportionment of a loss between two separate insurance policies issued by Continental and Acadia Insurance Company ("Acadia"), respectively, to Simon Pearce, Inc. ("Simon Pearce"). Acadia has filed a counterclaim seeking a declaration of its right to reimbursement from Continental for payments made to Simon Pearce under its policy. Pending before the Court are Continental and Acadia's Cross–Motions for Summary Judgment.

## I. FACTUAL BACKGROUND

### A. The Insured's Loss

The material facts in this case are undisputed. Continental writes various forms of insurance in several states, including Vermont, is incorporated under the laws of New Hampshire, and has its principal place of business in Illinois. Acadia also writes forms of insurance in Vermont and other states, is incorporated under the laws of Maine, and has its principal place of business in Maine. At all times relevant to this case, Simon Pearce, a glass manufacturing company, held separate policies issued by Continental and Acadia insuring real and personal property at Simon Pearce's manufacturing plant in Quechee, Vermont.

On May 17, 1994, a fire occurred at Simon Pearce's Quechee plant. The fire resulted when a circuit breaker malfunctioned and arced, thereby causing electrical equipment located at the plant to ignite. The fire was confined to the electrical equipment, and no other property on the premises was damaged.

Damage to Simon Pearce's equipment caused by electrical arcing amounted to $27,600. Damage to equipment caused by fire totaled $77,040. Continental paid Simon Pearce for all of the damage caused by electrical arcing, and for one half of the fire damage, subject to a $10,000 deductible. Acadia demanded that Continental pay the entire fire loss, but when it refused, Acadia paid for that portion of the fire loss that Continental did not cover. Payments were also made by the partied for the business

interruption loss that Simon Pearce suffered due to the arcing and fire. Continental's payments totaled $56,120.00, and Acadia's totaled $61,076.91.

After all payments had been made, Acadia renewed its demand that Continental assume full liability for the losses sustained by Simon Pearce. Continental refused, and filed this action seeking a declaration of the liabilities of each party for Simon Pearce's loss. Acadia subsequently filed a counterclaim against Continental seeking a declaration that Acadia is entitled to reimbursement from Continental for all payments made to Simon Pearce as a result of the fire, plus costs and interest.

### B. The Policies

#### 1. Acadia's Policy

Acadia's policy provided Simon Pearce coverage for "direct physical loss to covered property at covered locations caused by a covered peril." The policy provides coverage for "building property," which is defined to include "fixtures, machinery, and equipment which are a permanent part of a covered building or structure."

The Acadia policy includes an exclusion for "Property More Specifically Insured," as follows:

We do not cover property which is more specifically insured in whole or in part by any other insurance. We do cover the amount in excess of the amount due from the more specific insurance.

Finally, the policy includes an exclusion stating:

Electrical Currents—We do not pay for loss caused by arcing or by electrical currents other than lightning. If fire results, we cover only the loss caused by the fire.

#### 2. Continental's Policy

The Continental policy, entitled "Boiler and Machinery Coverage Form," provided coverage for "direct damage to Covered Property caused by a Covered Cause of Loss." The policy defined "Covered Property" as:

[A]ny property that:
a. You own; or

b. Is in your care, custody or control and for which you are legally liable....

"Covered Cause of Loss" was defined as follows:

A Covered Cause of Loss is an "accident" to an "object" shown in the Declarations. An "object" must be in use or connected ready for use at the location specified for it at the time of the "accident."

"Accident" is defined as "a sudden and accidental breakdown of the 'object' or a part of the 'object'." An endorsement to the policy defines "object" to include any "mechanical or electrical machine or apparatus used for the generation, transmission or utilization of electrical power."

In addition, an exclusion in the policy excludes loss caused by or resulting from:

Fire or explosion that occurs at the same time as an "accident" or that ensues from an "accident". With respect to any electrical equipment forming a part of an "object", this exclusion is changed to read:

Fire or explosion outside the "object" that occurs at the same time as an "accident or ensues from an accident".

The Continental policy provides coverage in the amount of $850,000.

## II. DISCUSSION

Summary judgment may only be granted if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). At the summary judgment stage, "the judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court is to take the non-movant's version of the facts as true, and all inferences are to be drawn in his or her favor. *Id.* at 255, 106 S.Ct. at 2513–14.

■ The present case is appropriate for resolution at the summary judgment stage because the parties agree that there are no material facts in dispute, and all that remains are legal questions regarding the interpretation of the parties' respective insurance policies. Ultimately, this case turns on the interpretation of the phrase "property more specifically insured" contained in an exclusion to the Acadia policy.

Acadia's argument is as follows. First, Acadia notes that its policy limits coverage for "property more specifically insured" to the amount in excess of that due from the more specific insurance. Second, Acadia relies on the exclusionary language of the Continental policy excluding coverage for "[f]ire or explosion outside the 'object' that occurs at the same time as an 'accident' or ensures from an 'accident.'" In stating that fires or explosions outside of the object (in this case, the circuit breaker) are excluded, the Continental policy implicitly provides coverage for fires or explosions originating within the object, as was the case in the Simon Pearce fire. Thus, Acadia concludes, the insured's property is "property more specifically insured" under the Continental policy.

Close scrutiny of Acadia's argument reveals that although the Continental policy more specifically insures, it does not more specifically insure Simon Pearce's *property*. Rather, it more specifically insures against a particular *peril*, namely, fire or explosion outside of the circuit breaker or other covered object. In effect, Acadia seeks to focus the Court's attention on the words "more specifically insured," while ignoring the word "property." According to Acadia, the exclusion applies either in the case of enumerated property for which coverage is provided, or, as here, in the case of a particular peril to which coverage extends. However, such delicate parsing of the Acadia exclusion defies the clear meaning of the text, and runs counter to the usage of the terms "property" and "peril" in the Acadia policy.

By its own terms, the Acadia policy limits coverage only for "property" more specifically covered. It is clear that the policy deliberately distinguishes between property and perils. Indeed, the policy contains separate headings entitled "PROPERTY COVERED," "PROPERTY EXCLUDED," "PERILS COVERED," and "PERILS EX-

CLUDED." Significantly, the "property more specifically excluded" language appears within the "PROPERTY EXCLUDED" section of the policy. In light of the policy's distinct usage of "property" and "perils," and the placement of the relevant exclusion within the "PROPERTY EXCLUDED" section, the term "property" cannot be read out of the exclusion as Acadia urges, nor can it be read to encompass both property and perils. To the contrary, it is clear that the term "property" is integral to the exclusion in question, and than it is wholly distinct from perils.

The relevant caselaw, scant as it is, lends no support to Acadia's position. No court has addressed the question of whether "property more specifically insured" covers a more specifically insured peril. The few cases that have dealt with such policy exclusion language at all have held it to be satisfied only when a particular piece of property is specifically enumerated in a policy. *See, e.g., Gottesman v. Aetna Ins. Co.*, 177 Conn. 631, 418 A.2d 944 (1979); *Texas City Terminal Ry. Co. v. American Equitable Assurance Co.*, 130 F.Supp. 843, 866 (S.D.Tex.1955) (and cases cited therein).

Acadia has also argued that Simon Pearce's property is more specifically insured by the Continental policy due to the fact that Continental's is a "boiler and machinery" policy. Again, Acadia's argument founders on the distinction between property and peril. As Acadia correctly notes, hazards associated with boilers and production machinery are often excluded from general insurance policies, thus prompting the growth of boiler and machinery coverage. Insuring Real Property § 5.01 (Matthew Bender, 1996). However, boiler and machinery policies, such as Continental's policy in the present case, do not necessarily insure only boilers and production machinery. Indeed, Continental's policy insured against consequential damage to other property at the Simon Pearce facility caused by a fire within the circuit breaker. Thus, the boiler and machinery policy provided added coverage for specified perils, but not for specified property.

In support of its position, Acadia relies on *Enosburg Falls v. Hartford Steam Boiler Inspection & Ins. Co.*, 117 Vt. 114, 85 A.2d 577 (1952), but such reliance is misplaced. *Enosburg Falls* involved a dispute between a general property insurer and a boiler and machinery insurer over whether the boiler and machinery policy constituted "other fire insurance," thus requiring the boiler and machinery insurer to pay a pro rata share of the fire loss of an insured as required by the general insurer's policy. In holding that the boiler and machinery policy was not "other fire insurance," the Vermont Supreme Court stated that the policy "afforded insurance of a specified, particular, definite and restricted kind." *Id.* at 123, 85 A.2d at 583. This, Acadia suggests, indicates the Vermont Supreme Court's view that as between a general property policy and a boiler and machinery policy, the boiler and machinery policy more specifically insures the property of an insured. However, the specificity of the boiler and machinery policy to which the court refers relates, once more, to perils rather than property. Indeed, the only way that the court could decide whether the policy constituted fire insurance was to focus on the perils rather than the property covered, as fire is itself a particular type of peril. As such, *Enosburg Falls* does not advance Acadia's position.

■ At best, Acadia's argument that the phrase "property more specifically insured" embraces perils in addition to property requires a sufficiently strained reading of the policy as to render it ambiguous. The Vermont Supreme Court has made it abundantly clear that under Vermont law, although an insurer will not be deprived of an unambiguous term placed in a policy for its benefit, the court "will strictly construe an insurance contract against the insurer, resolving any ambiguity in the insured's favor." *Suchoski v. Redshaw*, 163 Vt. 620, 622, 660 A.2d 290, 292 (1995); *see also Select Design, Ltd. v. Union Mut. Fire Ins. Co.*, —— Vt. ——, 674 A.2d 798, 800 (1996). Thus, even if the Court were not to hold that the "property more specifically insured" language applies only to property, Acadia's motion for summary judgment would still fail.

The Court concludes that the Simon Pearce plant was not "property more specifi-

cally insured" by the Continental policy. Alternatively, the relevant language of the Acadia policy is ambiguous, and the ambiguity is resolved in favor of Continental, in accordance with Vermont law. Thus, the Acadia and Continental policies both provide primary coverage for Simon Pearce's loss of May 17, 1995. Acadia is obligated to pay its appropriate share of the insured loss, and therefore is not entitled to reimbursement by Continental for the amounts it has paid to Simon Pearce pursuant to the terms of its policy.

## III.  CONCLUSION

Based on the foregoing analysis, Plaintiff's Motion for Summary Judgment (Paper No. 19) is hereby GRANTED, and Defendant's Cross–Motion for Summary Judgment (Paper No. 23) is hereby DENIED.