**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, Plaintiff,**

v.

**The TRAVELERS INDEMNITY COMPANY, Defendant.**

**No. 01 Civ. 3183(WCC).**

United States District Court, S.D. New York.

July 19, 2002.

Law Offices of Robert G. Mazeau, New York City, James J. Bonicos, of counsel, for plaintiff.

Robinson & Cole, LLP, Hartford, CT, Stephen E. Goldman, of counsel, for defendant.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") brings the instant action against defendant The Travelers Indemnity Company ("Travelers") seeking indemnity under a reinsurance contract. Both parties now move for summary judgment pursuant to FED.R.CIV.P. 56. For the reasons that follow, National Union's motion for summary judgment is granted and Travelers' cross-motion for summary judgment is denied.

### BACKGROUND

The following facts are undisputed unless otherwise noted.[1]    National Union

---

1.  Local Rule 56.1(a) provides that upon any motion for summary judgment, "there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contents there is no genuine issue to be tried.  Failure to submit such a statement may constitute grounds for denial of the motion."  Travelers included a Rule 56.1 Statement with its motion for summary judgment.  National Union, however, failed to submit such a statement in conjunction with its motion for summary judgment.  For the purposes of these motions,

issued a property insurance policy to Integrated Packaging Corporation ("Integrated Packaging"), a paper carton manufacturer, for the term August 30, 1997 to March 31, 1999 (the "National Union policy").  (Def.Rule 56.1 Stmt. ¶ 1.) The National Union policy provides "all-risk" coverage to Integrated Packaging subject to certain exclusions.  The risks excluded from coverage are outlined in a form entitled "Causes of Loss—Special Form" which provides, in part:

A.  COVERED CAUSES OF LOSS

When Special is shown in the Declarations, Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

1.  Excluded in Section B., Exclusions; or

2.  Limited in Section C.; Limitations.

(Def.Mem.Supp.Summ.J., Ex. A at 17.)[2] The categories of property covered by the "all-risk" policy are listed in the Building and Personal Property Coverage Form ("B & P Coverage Form"), which states:

A.  Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

---

this Court will accept as true the uncontested facts as stated in National Union's memorandum in support of summary judgment.

2.  Both National Union and Travelers attached copies of the National Union policy as exhibits to their respective motions for summary judgment.  However, because Travelers paginated their copy, we will refer to the page numbers of Travelers exhibit when citing the National Union policy.

(*Id.*, Ex. A at 8.) In the list of property not covered, the B & P Coverage Form includes a so-called "excess clause".[3] The excess clause provides that "Covered Property does not include: (k) Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect it or not) from that other insurance." (*Id.*, Ex. A at 9 ¶ A(2)(k).) The National Union policy also includes a Boiler and Machinery Endorsement ("B & M Endorsement") that provides coverage for certain specified causes of loss which would otherwise be excluded under the property coverage form. (*Id.* at 6.) The B & M Endorsement provides:

1. Insuring Agreement

 Subject to all the provisions stated herein and in the Policy to which this Endorsement is part, not in conflict herewith, the Company shall be liable for:

 a. direct physical loss to property of the Insured and to property of others in the care, custody or control of the Insured; and

 b. the loss and expense resulting from the necessary interruption of business all as resulting from an "Accident" to an "Object;" and

 c. extra expense to run the business; and

 d. spoilage.

 all as resulting from an "Accident" to an "Object."

(*Id.*, Ex. A at 42.) The B & M Endorsement defines the terms "Accident" and "Object" as follows:

6. Definitions

 A. "Accident" means a sudden and accidental breakdown of an "Ob-

ject" or part of the "Object." At the time the breakdown occurs, it must become apparent by physical damage that necessitates repair or replacement.

 B. "Object" shall mean:

 (1) any boiler, fired or unfired pressure;

 (2) refrigeration or air conditioning system;

 (3) piping and its accessory equipment; and

 (4) any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power

 that you own, is in your care, custody or control and for which you are liable while at a covered location.

(*Id.*, Ex. A at 44.) The B & M Endorsement covers only losses that are not otherwise covered under the National Union policy. This is made clear by a provision of the B & M Endorsement that excludes coverage for losses resulting from "a peril insured elsewhere under this Policy." (*Id.*, Ex. A at 46 ¶ (13).)

Travelers entered an agreement with National Union to reinsure National Union's liability under the B & M Endorsement (the "reinsurance contract"). Reinsurance is a contractual agreement in which one insurer (the ceding insurer) transfers all or a portion of the risk it underwrites to another insurer (the reinsurer). BARRY R. OSTRAGER & THOMAS R. NEWMAN, HANDBOOK ON INSURANCE COVERAGE DISPUTES § 15.01[a] (10th ed.2000) [hereinafter OSTRAGER & NEWMAN] (citing *Colonial Am. Life Ins. Co. v. Commissioner*, 491 U.S. 244, 109 S.Ct. 2408, 105 L.Ed.2d 199 (1989)). The reinsurer agrees to indemni-

---

**3.** *See, e.g., Utica Mut. Ins. Co. v. Travelers Ins. Co.*, 213 A.D.2d 983, 624 N.Y.S.2d 485, 486 (4th Dep't 1995) (clause containing this language "characterized as an excess clause").

fy the ceding insurer for any liability incurred that is covered by the reinsurance. *Id.* Reinsurance allows an insurer to spread risks among a larger pool of insurers and permits a reduction in the amount of reserves the insurer would otherwise be required to maintain. *Id.* § 15.01[b]. In order to set the terms of the reinsurance agreement, Travelers issued National Union a Boiler & Machinery Reinsurance Certificate (the "Reinsurance Certificate") which provides, *inter alia,* that Travelers liability is limited to National Union's liability under B & M Endorsement:

> 1. Reinsurer's Liability
>
> The Reinsurer's Liability under this [Reinsurance Certificate] shall follow [National Union's] in accordance with the terms and conditions of the policy reinsured hereunder except with respect to those terms and/or conditions as may be nonconcurrent with the terms of this Certificate. . . . The retention of [National Union] and liability of the Reinsurer shall be determined as though [National Union's policy] applied only to Boiler Machinery exposures.

(Def.Mem.Supp.Summ.J., Ex. B at 3.)

On September 27, 1997, an off-premises power transformer supplying electricity to Integrated Packaging malfunctioned causing a power surge. (Def.Rule 56.1 Stmt. ¶ 4.) National Union and Travelers disagree over the cause of the transformer's malfunction. According to Travelers, vandalism caused the damage to the transformer. National Union, however, disputes Travelers' contention that the transformer's malfunction resulted from vandalism. Both parties have submitted statements from experts in support of their respective positions.[4] The power surge from the transformer caused small fires and resulting damage to various electrical fixtures and components throughout Integrated Packaging's plant, requiring repair and replacement. (Def.Rule 56.1 Stmt. ¶ 4.) Consequently, Integrated Packaging made a claim to National Union for property damage and business interruption losses (the "Integrated Packaging claim") which National Union has since reimbursed. (Complt. ¶¶ 13, 14.)

After National Union presented the Integrated Packaging claim to Travelers for indemnification, Travelers had David LaPointe, a private adjuster, investigate the loss to determine whether coverage existed under the B & M Endorsement. (Pl. Mem.Supp.Summ.J. at 3.) In a letter dated September 9, 1998, LaPointe concluded that because the cause of the loss was vandalism, and vandalism was not excluded under National Union's "all-risk" coverage, the loss was caused by a "peril insured elsewhere" in the National Union policy and thus excluded under the B & M Endorsement. (*Id.,* Ex. C.) This action followed.

## DISCUSSION

### I. *Summary Judgment Standard*

Under FED.R.CIV.P. 56, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter

---

4. Apparently, a three-foot-long steel bar was found lying on the transformer after the malfunction. Travelers submitted the affidavit of an expert, J. Duncan Glover, who concluded that it was "more likely than not" that an unauthorized person introduced the steel rod that damaged the transformer. (Def.Mem.Opp.Summ.J., Ex. A ¶ 14.) National Union provided a statement from its own expert, Howard A. Marks, who determined that the steel rod was in no way related to the transformer's malfunction. (Pl. Reply Mem. Supp.Summ.J., Ex. A.)

of law. *See* FED.R.CIV.P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in his favor. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See id.* at 255, 106 S.Ct. 2505. To defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir.1994).

## II. *Choice of Law*

The reinsurance contract at issue here does not specify a governing law for contract interpretation. Accordingly, as a federal court sitting in diversity, we must apply the choice of law rules of New York, the state in which this action was brought. *See Arkwright–Boston Mfrs. Mut. Ins. Co. v. Calvert Fire Ins. Co.*, 887 F.2d 437, 439 (2d Cir.1989). "New York courts apply an 'interest analysis' to choice of law issues involving contractual disputes and, therefore, the law of the jurisdiction having the greatest interest in the litigation will be applied." *Id.* (citations and quotations omitted).

We conclude that New York has the greatest interest in the resolution of this dispute. National Union is a New York corporation seeking recovery under the reinsurance contract. Furthermore, the reinsurance contract was negotiated and entered into in New York. (Pl.Mem. Opp.Summ.J. at 1.) Travelers' argument that New Jersey law should apply is unpersuasive. While New Jersey is the corporate home of Integrated Packaging and the location of the insured property, Integrated Packaging is not a party in the instant dispute and has already received payment pursuant to the terms of the National Union policy. Any payment made in accordance with the reinsurance contract would be made to National Union in New York. As a result, New York has the greatest interest in the outcome of this action and we therefore conclude that a New York court would apply New York law to the reinsurance contract at issue here. *See TIG Premier Ins. Co. v. Hartford Accident & Indemnity Co.*, 35 F.Supp.2d 348, 350 (S.D.N.Y.1999) (holding that "the contract is governed by the substantive law of ... the state where, *inter alia*, the Reinsurance Certificate was issued and where claims on that certificate would be expected to be made").

## III. *Waiver*

Under New York law, "an insurer is deemed, as a matter of law, to waive a defense to coverage where other defenses are asserted, and where the insurer possesses sufficient knowledge (actual or constructive) of the circumstances regarding the unasserted defense." *New York v. AMRO Realty Corp.*, 936 F.2d 1420, 1431 (2d Cir.1991) (holding that insurance company waived a late notice defense when it failed to assert it along with several other grounds for disclaiming coverage). National Union argues that because Travelers, through a letter from its adjuster

LaPointe, denied coverage only on the basis of the "peril insured elsewhere" clause in the B & M Endorsement, it has waived all other defenses to coverage. (Pl.Mem. Supp.Summ.J. at 5–6.)

■ National Union has overlooked a major limitation of the waiver doctrine. As New York courts have explained, the waiver doctrine is inapplicable if "the issue is the existence or nonexistence of coverage." *Albert J. Schiff Assoc., Inc. v. Flack,* 73 A.D.2d 329, 425 N.Y.S.2d 612, 618 (1980). If the rule were otherwise, the insured would be allowed to extend its coverage beyond what was originally bargained for. *Id.; see also Cent. Gen. Hosp. v. Chubb Group Ins. Cos.,* 90 N.Y.2d 195, 659 N.Y.S.2d 246, 249, 681 N.E.2d 413 (1997). In other words, a waiver may not apply to create coverage where none exists. *Gallien v. Conn. Gen. Life Ins. Co.,* 49 F.3d 878, 885 (2d Cir.1995). Thus, because all of Travelers' defenses to coverage involve the nonexistence of coverage under the B & M Endorsement, the waiver doctrine is inapplicable.

## IV.  *Contract Interpretation*

■ Because Travelers' liability follows that of National Union under the B & M Endorsement, this Court must construe the underlying National Union policy to determine whether the loss falls under the B & M Endorsement. Under New York law, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Village of Sylvan Beach v. Travelers Indem. Co.,* 55 F.3d 114, 115 (2d Cir.1995). In general, summary judgment based on contract interpretation is appropriate if the language of the contract is unambiguous. *K. Bell & Assoc. v. Lloyd's Underwriters,* 97 F.3d 632, 637 (2d Cir. 1996). Whether a provision of a contract is ambiguous is a matter of law for the court. *See Mellon Bank, N.A. v. United Bank Corp.,* 31 F.3d 113, 115 (2d Cir.1994). Contract language is not ambiguous unless "it is reasonably susceptible of more than one interpretation, and a court makes this determination by reference to the contract." *Banque Arabe et Internationale D'Investissement v. Md. Natl. Bank,* 57 F.3d 146, 152 (2d Cir.1995). In reviewing two interpretations of a contract provision, the court "need not determine which is the more likely interpretation" but rather "whether each is sufficiently reasonable to render the clause ambiguous." *Mellon Bank,* 31 F.3d at 115 (quoting *Wards Co. v. Stamford Ridgeway Assocs.,* 761 F.2d 117, 120 (2d Cir.1985)). Furthermore, in determining whether an ambiguity exists, a contract should be read as a whole. *See W.W.W. Assocs. v. Giancontieri,* 77 N.Y.2d 157, 565 N.Y.S.2d 440, 443, 566 N.E.2d 639 (1990).

■ Under normal rules of construction governing insurance contracts, an ambiguous contract must be read against the insurer in favor of the insured. *K. Bell,* 97 F.3d at 638–39. Applying this principle, National Union argues that any ambiguity in the National Union policy must be read against Travelers, the reinsurer. (Pl. Mem.Supp.Summ.J. at 14.) However, the rules of construction meant to protect individual purchasers of original insurance policies do not apply to reinsurance. *See Unigard Sec. Ins. Co., Inc. v. North River Ins. Co.,* 4 F.3d 1049, 1065 (2d Cir.1993); *see also Loblaw, Inc. v. Employers' Liab. Assurance Corp.,* 85 A.D.2d 880, 446 N.Y.S.2d 743, 745 (4th Dep't 1981); Ostrager & Newman § 15.03[b]. This canon of construction does not apply because reinsurance contracts are negotiated at arm's length by two sophisticated parties. *Unigard,* 4 F.3d at 1065. This is especially true in this case where the contract at issue is National Union's own policy. We

will therefore construe the National Union policy pursuant to a principle of neutral interpretation. *Id.*

### A. *"Accident" to an "Object"*

In order for coverage to exist under the B & M Endorsement, the claimed loss must result from an "Accident" to an "Object." (Def.Mem.Supp.Summ.J., Ex. A at 44.) As a defense to coverage, Travelers maintains that the damage to Integrated Packaging's property did not result from an "Accident" to an "Object." According to Travelers, the damage to Integrated Packaging's property resulted from the power surge caused by vandalism to an off-premises transformer. However, because the transformer was not "owned" or in the "care, custody or control" of Integrated Packaging, it was not an "Object" as defined under the B & M Endorsement. (Def.Mem.Supp.Summ.J. at 14–15.) Furthermore, Travelers maintains that even if the damaged electrical components are considered "Objects" to establish coverage under the B & M Endorsement, the damage to them was not caused by an "Accident." As Travelers argues, an "Accident" requires a "sudden and accidental breakdown" which does not include damage caused by an external force. (*Id.* at 15.) National Union, on the other hand, disputes Travelers' interpretation of "breakdown," maintaining that the power surge caused an "Accident" to the building's electrical fixtures and components which resulted in Integrated Packaging's loss. (Pl. Mem.Opp.Summ.J. at 13–14.)

■ Because the transformer was owned by a power company, and not Integrated Packaging, the transformer may not be considered an "Object" for purposes

of the B & M Endorsement. However, the B & M Endorsement specifically includes in its definition of "Object" "any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of electrical power," which aptly describes Integrated Packaging's damaged electrical equipment and fixtures. (Def.Mem.Supp.Summ.J., Ex. A at 44 ¶ 6(B)(4).) The question, therefore, is whether the damage to this property was caused by an "Accident."

The parties' respective arguments turn on the interpretation of the term "breakdown" within the definition of "Accident." According to Travelers, "breakdown" should be interpreted to include only internal failures. (*Id.* at 16.) In support of this definition, Travelers cites the case *Caldwell v. Transp. Ins. Co.*, 234 Va. 639, 364 S.E.2d 1 (1988), in which the Virginia Supreme Court interpreted "breakdown" in the context of an insurance contract as restricted to "losses arising from internal or inherent deficiency or defect, rather than from any external cause." *Id.* 364 S.E.2d at 3. Applying this definition, Travelers argues that the electrical fixtures and components did not suffer "breakdown" because the damage to them was caused by the power surge—an external force. National Union, on the other hand, argues that the *Caldwell* case itself recognizes that "breakdown" is susceptible to two interpretations—the narrow definition advanced by Travelers and a broad definition that includes losses arising from external causes. (Pl.Mem.Opp.Summ.J. at 13–14.) National Union thus maintains that *Caldwell* stands for the proposition that the proper construction of "breakdown" depends on the context in which it is used within the contract.[5] (*Id.*) Moreover, Na-

---

5. National Union does not point to any provisions in the contract that favor adopting the broad interpretation of "breakdown." In-

stead, National Union argues that this Court must construe any ambiguity against Travelers. (Pl.Mem.Opp.Summ.J. at 15.) Howev-

tional Union argues that when the broad definition of "breakdown" is applied, the power surge that damaged Integrated Packaging's property qualifies as an "Accident" under the B & M Endorsement.

■ Reading the contract as a whole, as we must, *see W.W.W. Assocs.,* 565 N.Y.S.2d at 443, 566 N.E.2d 639, we conclude that the term "breakdown" as used in the definition of "Accident" should be construed broadly to include internal damage resulting from external causes. Other provisions of the B & M Endorsement unambiguously illustrate that the term "Accident" was meant to be interpreted broadly. For example, the "Exclusions" section of the B & M Endorsement excludes coverage for loss resulting from: "an 'Accident' caused by aircraft or vehicles, lightning, sinkhole, collapse, smoke, sprinkler leakage, or weight of snow, ice or sleet, fire, windstorm, hail, freezing (caused by cold weather), or molten material." (Def.Mem.Supp.Summ.J. at 46 ¶ 7(11).) If "Accident" were intended to be interpreted to exclude damage resulting from external causes, this provision would be rendered superfluous. *See Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan,* 7 F.3d 1091, 1095 (2d Cir. 1993) (court must "safeguard against adopting an interpretation that would render any individual provision superfluous"). In addition, the B & M Endorsement provides that: "[i]f an initial 'Accident' causes other 'Accidents,' all will be considered 'One Accident,' clearly contemplating that an 'Accident' may have external causes." (Def.Mem.Supp.Summ.J. at 45 ¶ 6(C).) Because "Accident" in the context of the B & M Endorsement should be interpreted broadly to include a "breakdown" caused by an external force, the "breakdown" of Integrated Packaging's electrical components and fixtures caused by the power

surge qualifies as an "Accident" to an "Object" under the B & M Endorsement. Summary judgment on this issue is therefore granted in favor of National Union.

### B. *"Peril Insured Elsewhere"*

Travelers argues that even if Integrated Packaging's loss resulted from an "Accident" to an "Object," the "peril insured elsewhere" clause precludes coverage under the B & M Endorsement. (Def.Mem.Supp.Summ.J. at 16–20 & Ex. A at 46 ¶ 7(13).) According to Travelers, because the cause of Integrated Packaging's loss, vandalism to the transformer, is not excluded under the "all-risk" coverage, it falls under that coverage and is thus a "peril insured elsewhere" excluded under the B & M Endorsement. (*Id.* at 16–18.) Conversely, National Union asserts that electrical arcing, an excluded cause of loss under the "all-risk" coverage, was the proximate cause of the loss. In addition, National Union maintains that the excess clause in the B & P Coverage Form, which excludes from the definition of covered property "property ... more specifically described" elsewhere in the policy, shifts coverage to the B & M Endorsement and nullifies the "peril insured elsewhere" clause. (Pl.Mem.Opp.Summ.J. at 5–12.) We first consider National Union's argument with respect to the excess clause.

National Union argues that the B & M Endorsement "more specifically describes" the property damaged in this case. (Pl. Mem.Supp.Summ.J. at 13.) The definition of "Object" in the B & M Endorsement includes "any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power"—a definition that describes Integrated Packaging's damaged electrical equipment and fixtures. (*Id.;*

er, this Court has already rejected this argument. *See infra* Part IV.

Def.Mem.Supp.Summ.J., Ex. A at 44 ¶ 6(B)(4).) By contrast, the B & P Coverage Form's list of covered property includes "Permanently installed: (a) Fixtures; (b) Machinery; and (c) Equipment." (Def.Mem.Supp.Summ.J., Ex. A at 8 ¶ A(1)(a)(2).) National Union asserts that because the damaged property is "more specifically described" in the B & M Endorsement, the "peril insured elsewhere" clause conflicts with the excess clause and the former is given no effect. (Pl.Mem. Supp.Summ.J. at 14.)

In support of its argument, National Union cites *Utica Mut. Ins.,* 624 N.Y.S.2d at 486, in which the court considered identical policy language. In *Utica Mut. Ins.,* lightning struck a school building, damaging an electrical transformer. *Id.* at 486. The school district had a policy of insurance covering building and personal property and another policy covering boiler and machinery. *Id.* The boiler and machinery insurer disclaimed coverage based on an exclusion in its policy for losses caused by lightning if the loss was covered under another policy of insurance. *Id.* The building and personal property policy, however, had an excess clause that, like the National Union policy, provided that covered property did not include property "that is covered under another form of this or any other policy in which it is more specifically described...." *Id.* Similarly, the boiler and machinery policy covered accidents to an object, defining "object" with language identical to that used in the B & M Endorsement; *i.e.* any "mechanical or electrical machine or apparatus used for the generation, transmission or utilization of electrical power." *Id.* The court in *Utica Mut. Ins.* concluded that the boiler and machinery policy "more specifically described" the property damaged in that case. *Id.* It also held that although the boiler and machinery policy excluded coverage for loss resulting from lightning "if coverage ... is provided by another policy of insurance you have," this "nonliability" clause conflicted with the excess clause. *Id.* As the court explained, New York law holds that "when an excess and nonliability clause conflict, the nonliability clause is not given effect." *Id.* (citing *Michigan Alkali Co. v. Bankers Indem. Ins. Co.,* 103 F.2d 345 (2d Cir.1939); *Mosca v. Ford Motor Credit Co.,* 150 A.D.2d 656, 541 N.Y.S.2d 528, 530 (2d Dep't 1989); 16 COUCH, INSURANCE 2D § 62:77.) National Union maintains that the *Utica Mut. Ins.* case is analogous to the instant action, and that the "peril insured elsewhere" clause [6] in the B & M Endorsement is nullified by the excess clause.

Travelers maintains that the excess clause is inapplicable to the facts of this case. As Travelers argues, the excess clause only applies in the case of *property* more specifically insured and not *perils* more specifically insured. (Def.Mem.Supp.Summ.J. at 18–20.) Travelers contends that the B & M Endorsement's definition of "Objects" does not describe covered property, but rather, describes the type of perils covered under the endorsement. (Def. Reply Mem. Supp.Summ.J. at 4.) In other words, in order for coverage to attach under the B & M Endorsement, the damage to one of the described categories of "Objects" must be caused by an "Accident." (*Id.*) However, with respect to *property* covered under the B & M Endorsement, the endorsement provides coverage for direct physical loss to all "property of the Insured and to property of others in the

---

6. The "peril insured elsewhere" clause can be characterized as a nonliability or "escape" clause that attempts to avoid all liability for a loss covered by another policy of insurance. *See* OSTRAGER & NEWMAN § 11.02[c].

care, custody or control of the Insured" as long as the loss results from an "Accident" to an "Object." (*Id.;* Def. Mem.Supp.Summ.J., Ex. A at 42 ¶ 1(a).) To clarify this point, Travelers argues that a "boiler" would be included in the B & M Endorsement's definition of "Object." However, damage to the boiler may or may not be covered under the B & M Endorsement depending on the cause of the damage. (Def. Reply Mem. Supp.Summ.J. at 4.) "It is only in the determination of whether a particular cause of loss is covered that the definition of 'objects' has any importance." (*Id.* at 4–5.) In addition, damage to other property of the insured, whether or not it fits the definition of "Object" may be covered under the B & M Endorsement if the damage results from an "Accident" to an "Object." (*Id.* at 5.) Therefore, Travelers argues, the property listed in the description of "Object" in the B & M Endorsement cannot be considered "[p]roperty covered under another coverage form . . . in which it is more specifically described." Instead, the property covered under the B & M Endorsement is *all* the property of the insured as long as it is damaged by an "Accident" to an "Object." (*Id.* at 4.) According to Travelers' analysis, the B & P Coverage Form "more specifically describes" the covered property than the B & M Endorsement and the excess clause does not apply.

In support of its position, Travelers cites *Continental Ins. Co. v. Acadia Ins. Co.,* 974 F.Supp. 371 (D.Vt.1997), a case which turned on the interpretation of the phrase "property more specifically insured." *Id.* at 373. The *Continental Ins.* case involved policies issued by two different insurance companies to a glass manufacturing company. A fire resulted at the insured's plant when a circuit breaker malfunctioned, causing electrical equipment to ignite. *Id.* After the plaintiff, a boiler and machinery insurer, paid for all of the damage caused by electrical arcing and half the fire damage, the defendant, an "all-risk" insurer, claimed that the plaintiff insurer was required to pay for all of the loss resulting from the fire. The defendant insurer, whose "all-risk" policy contained an excess clause similar to the one at issue, argued that the excess clause applied because the plaintiff insurer's policy more specifically insured against fire or explosions originating within "objects." [7] *Id.* The court in *Continental Ins.* concluded that the excess clause did not apply because, although the plaintiff insurer's policy more specifically insured against the particular *peril* that caused the damage, it did not more specifically insure the damaged *property.* *Id.*

■■■ Although Travelers' argument against application of the excess clause in the instant action is a reasonable one, because we sit as a federal court in diversity, the holding in *Utica Mut. Ins.* instructs our decision. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *see also Michalski v. Home Depot, Inc.,* 225 F.3d 113, 116 (2d Cir.2000) (citing *West v. AT & T,* 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940)) (decisions of New York State's Appellate Division are instructive on how the Court of Appeals would rule on an issue and should not be ignored unless there is persuasive indications that the Court of Appeals would decide otherwise).[8] In considering

7. The plaintiff insurer's policy explicitly excluded coverage for "fire or explosion outside the 'object' that occurs at the same time as an 'accident.'" *Continental Ins.,* 974 F.Supp. at 373. The court accepted the defendant insur-er's argument that this provision implicitly provided coverage for fire or explosion occurring inside the object. *Id.*

8. Although it is proper to consider relevant case law from other jurisdictions in determin-

policy provisions essentially identical to the ones at issue in this case, the Appellate Division in *Utica Mut. Ins.* held that the property described within the definition of "object" in a boiler and machinery policy qualified as "property more specifically described" for purposes of triggering an excess clause. 624 N.Y.S.2d at 486. In light of the *Utica Mut. Ins.* decision, we conclude that the B & M Endorsement, in its definition of "Object," more specifically describes Integrated Packaging's property damaged by the power surge. Because the "peril insured elsewhere" clause conflicts with the excess clause, the "peril insured elsewhere" clause will not be given effect. *See Utica Mut. Ins.*, 624 N.Y.S.2d at 486–87 (policy providing excess coverage cannot be considered available insurance within the meaning of a nonliability clause); *see also* OSTRAGER & NEWMAN § 11.03[d][1][C] (New York law consistent with the majority approach that when one of two applicable policies contains an excess clause and the other contains an escape clause, the policy containing the escape clause is primarily liable for the loss). As a result, Travelers's defense to coverage under the B & M Endorsement is rejected and summary judgment is granted in favor of National Union.

Because we hold that the "peril insured elsewhere" clause has no effect under the B & M Endorsement, it is unnecessary to consider the parties' arguments with respect to whether the loss was proximately caused by an excluded peril under the "all-risk" coverage.

ing how the Court of Appeals would rule on an issue, *see Michalski,* 225 F.3d at 116, the Vermont District Court's decision in *Continental Ins.* is distinguishable from the instant action. Most importantly, the provision considered by the court in *Continental Ins.* specifically described a peril (fire) without refer-

## CONCLUSION

For the foregoing reasons, Integrated Packaging's loss is covered under the B & M Endorsement and Travelers is required by the reinsurance contract to indemnify National Union for its payment of Integrated Packaging's claim. National Union's motion for summary judgment is granted and Travelers' cross-motion for summary judgment is denied. Judgment will be entered in favor of National Union.

SO ORDERED.

ence to specific property. *Continental Ins.*, 974 F.Supp. at 373. In *Utica Mut. Ins.* and the instant action, even though the provision at issue appears as part of the definition of the peril covered by the boiler and machinery policy, the provision involves a detailed description of the damaged property.