**WESTPORT RESOURCES INVEST-
MENT SERVICES, INC., Plain-
tiff–Appellant,**

v.

**CHUBB CUSTOM INSURANCE
CO., Defendant–Appellee.**

No. 04–0409–CV.

United States Court of Appeals,
Second Circuit.

Sept. 23, 2004.

Robert M. Sullivan, Nicoletti Hornig Campise Sweeney & Paige, New York, NY, for Appellant.

Michelle Kisloff (Jonathan A. Constine, on the brief), Hogan & Hartson LLP, Washington, DC, for Appellee.

PRESENT: FEINBERG, MESKILL, and B.D. PARKER, Jr., Circuit Judges.

## SUMMARY ORDER

Plaintiff–Appellant Westport Resources Investment Services, Inc., a securities brokerage firm, appeals from a judgment of the United States District Court for the Southern District of New York (Griesa, *J.*), granting summary judgment to Defendant–Appellee Chubb Custom Insurance Co. The District Court held that under the professional indemnity insurance policy Westport purchased from Chubb, Chubb was not required to defend or indemnify Westport in two NASD arbitration proceedings against it because the "intentional acts exclusion" precluded coverage. On appeal, Westport disputes the District Court's grant of summary judgment for Chubb, contending principally that (1) the intentional acts exclusion does not preclude coverage; (2) Chubb waived its right to invoke the intentional acts exclusion, or certain other exclusions, because it failed to invoke the exclusions in its initial denial of coverage letters; and (3) the District Court erred in not granting summary judgment for Westport. Chubb argues that the "unauthorized securities exclusion" also precludes coverage for the two underlying actions.

Familiarity with the relevant facts, procedural history, and legal issues is presumed. We review the District Court's award of summary judgment *de novo. Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998). Because we agree with the District Court's disposition, we affirm.

## Background

In March 2001, Chubb issued a "claims made" Securities Brokerage Executive and Professional Liability Policy ("the Policy") that covers Westport against "wrongful acts" by persons employed by or representing Westport. At oral argument, Westport conceded that it believed the purpose of the policy is to indemnify Westport for acts of negligence, not to cover acts of intentional misconduct.

Arthur Good, formerly a registered representative working for Westport, operated an investment vehicle named Boston Investment Group ("BIG") through which he sold millions of dollars worth of unregistered and worthless securities as part of a Ponzi scheme. At the time of the sales, Good was a registered representative at Westport and sold BIG securities to Westport clients. Good was later indicted for fraud and is now serving a substantial prison term.

In August 2001, two clients of Westport, Van's Livestock, Inc. ("Van's") and Roger Layton, brought claims against Westport alleging that Good fraudulently induced them to invest large amounts of money in his Ponzi scheme while he was working at Westport. Both complaints allege that Westport negligently failed to supervise and monitor Good's activities. Van's and Layton have both instituted NASD arbitrations against Westport.

Westport sent Chubb a timely notification of the investors' claims and requested that Chubb defend and indemnify Westport under the Policy. Chubb responded by letter that it would not provide coverage for the claims because they arose out of wrongful acts committed prior to the "retroactive date" of coverage specified in the policy. Chubb did not assert any other grounds for denying coverage but reserved the right to invoke other exclusions in the future.

## Discussion

■ The District Court correctly concluded that the "intentional acts exclusion" precludes coverage for Westport under the Policy. The intentional acts exclusion states, in relevant part, that coverage does not apply to any claim "brought about or contributed to by ... any knowing, intentional, fraudulent, or dishonest Wrongful Act by an Insured." Westport conceded below that Good was "an Insured" under the Policy, and there is no question that the underlying claims against Westport were "brought about or contributed to by" Good's fraudulent conduct. As Westport points out, the Policy's intentional acts exclusion includes a safe harbor provision for those insured parties who have not "participated or acquiesced in the knowing, intentional, fraudulent, or dishonest act." Westport is principally alleged to have been negligent in failing to supervise or monitor

Good. However, the safe harbor does not apply to "[c]laims based on or directly or indirectly arising out of or resulting from, in whole or in part, an Insured's commission of ... any ... criminal act." Because Good's conduct was undisputedly criminal and the underlying claims against Westport are "based on" and directly "aris[e] out" of Good's conduct, the safe harbor provision does not remove Westport from the operation of the intentional acts exclusion, which bars coverage for the underlying claims. *See Mt. Vernon Fire Ins. Co. v. Creative Housing Ltd.,* 88 N.Y.2d 347, 352, 645 N.Y.S.2d 433, 668 N.E.2d 404 (1996); *Allstate Ins. Co. v. Mugavero,* 79 N.Y.2d 153, 163, 581 N.Y.S.2d 142, 589 N.E.2d 365 (1992).

■ We further agree with the District Court that Chubb did not waive its right to invoke the intentional acts exclusion by failing to cite it in the denial of coverage letters. While "an insurer is deemed, as a matter of law, to have intended to waive a defense to coverage where other defenses are asserted," *State of New York v. AMRO Realty Corp.,* 936 F.2d 1420, 1431 (2d Cir. 1991), there is a "major limitation of the waiver doctrine." *Nat. Union Fire Ins. Co. of Pittsburgh v. Travelers Indemnity Co.,* 210 F.Supp.2d 479 (S.D.N.Y.2002). Under New York law, "where the issue is the existence or nonexistence of coverage (e.g., the insuring clause and exclusions), the doctrine of waiver is simply inapplicable." *Albert J. Schiff Assoc. Inc. v. Flack,* 51 N.Y.2d 692, 698, 435 N.Y.S.2d 972, 417 N.E.2d 84 (1980). We agree with the District Court that the cases upon which Westport relies are inapposite, and that "the application of the intentional acts exclusion is about whether coverage exists or not." *Westport Res. Inv. Serv., Inc. v. Chubb Custom Ins. Co.,* No. 02 Civ. 3096, slip op. at 13, 2003 WL 22966305 (S.D.N.Y. Dec. 15, 2003). Accepting Westport's

waiver argument would give Westport insurance that it never purchased, namely, coverage for the criminal acts of its representative. Chubb thus did not waive its right to invoke the intentional acts exclusion.

Because we conclude that the intentional acts exclusion precludes coverage for the underlying claims, Westport was not entitled to summary judgment. We need not consider Chubb's argument that the unauthorized securities exclusion also precludes coverage.

Accordingly, the judgment of the District Court is hereby AFFIRMED.